Even nursing? Ooh, yeah, yeah, yeah, yeah. . . . My name is Clayton Seward and I represent the petitioner below and the appellant in the habeas corpus matter. In 1992, David Lucek was arrested under some fairly, you know the facts, Lucek's execution but the point that I would like to make about that is that at that point in time, he needed a lawyer and he did not get a lawyer by any stretch of the imagination. The trial was in 94? Yes. And when was the lawyer obtained or provided to him? He was appointed in 1992, there has been no hearing at any level on what the interaction between the client and the lawyer were at that point. So the record has nothing to reflect their interaction at that point. So the issues before us go to 94, for example, was this counsel ineffective for failing to comply with the Strickland requirements? Yes, Your Honor. And why don't you run through that, we can take these one by one, but let's start with that one. How they do not comply, or I would say do comply with the Strickland requirements. The petitioner has established the effectiveness of counsel under Strickland by showing that in counsel's own file, there was a police report. There were three police reports, one for HK, one for SK and one for Rosemary Rodriguez. Yeah, I've looked at those. The one for SK contains a statement that flatly denies the two key mutually corroborating points of the testimony that arose for the first time at trial. Yet counsel shows, the record shows, counsel was absolutely unaware of that statement. So when the witnesses got up on the stand- You mean counsel did not have Ratcliffe's report in 1994? He did have Ratcliffe's report. What the record shows is that he was completely unaware that he had it. Because there are two key points. One is the fact- Was counsel impeaching or questioning HK on cross-examination? Yes, he did. And it seemed as he was making some points that there were conflicts in her testimony. Yes, Your Honor, but the conflicts do not rise to the level of the conflicts that he could have shown using these reports had he been aware of them. For one, with respect to HK, the record is a complete disaster. Because she, in fact, could not answer questions posed by the defense with anything other than I don't know or I don't remember. Well, there were problems all along the line. There were problems from the preliminary hearing on. But my concern, as I write this, is if I'm in defense counsel's shoes and I see the other things that are in Ratcliffe's report, why in the world would I want to run the risk of the other stuff in that report coming out? And isn't that kind of a cost-benefit analysis? It sounds like you're in a catch-22. How much benefit do I get by impeaching her with this prior statement and making the jury doubt her courtroom testimony at the risk of getting before the jury all kinds of other really inflammatory allegations that the jury otherwise wouldn't even know about? There are a number of answers to that. One is the importance of the point that was made. The point that is made by HK and hers is that it's a specific denial of the very act to which she testified to in lockstep with her sister. As I read this, it seems like there are at least alleged numerous, I'll say a number of incidents. Some HK and SK were present. Some only HK was present. Some SK was present. Some, I can't remember her last name, was present. Some, she was outside of the room. Some things that Lucy is alleged to have done were just him and HK or him and SK. And if you look through Rodriguez's statement, Radke's statement, a lot of that stuff seems to percolate up in one place or another. A lot of it is internally inconsistent and inconsistent with the courtroom testimony and the preliminary hearing testimony. But don't you run the risk if you delve into any of that, that the DA that brings out the rest of this stuff, which is going to really might send the jury to set up a wall with the allegation of the kind of person they may conclude, rightly or wrongly, that Mr. Lucek is? Again, it comes to the point of why would a skilled defense counsel, and the trial attorney here is a very skilled attorney, why would he run that risk? Because the statement that he did bring out in the preliminary hearing testimony, which was read, this wasn't a cross-examination, this was a stipulation to forego confrontation rights and read from a preliminary hearing transcript. In that preliminary hearing, the girl three times said, no, he never put his penis in my mouth, it was his fingers. The first time she said it, she said she was sure and that was it. I'm missing something. So at the preliminary hearing there were inconsistencies that were brought out in the children's testimony. By stipulation? Yes, by stipulation. But the point that I'm making is that through a series of, basically by refusing to accept the fact that it was a, that she was denying what the prosecutor wanted, the prosecutor just kept asking the same question until she changed her story. So within the preliminary hearing testimony, not only are there three denials, but there is the ultimate thing, which is she said yes, it happened. And this is after a long series of questions where the prosecutor refuses to accept the child's answer. The jury heard that. That was right for argument, right? No, the jury did not hear that because what occurred, the way that the testimony came in was that the testimony was read in part by the defense, it was read in part by the prosecution, and there was not a sequence that went through so that counsel could argue, look at how this came in. But the more important point is that Ratcliffe's report is the very day that this supposedly occurred. Can I ask you a question? Just tell me from a, maybe it's the trial judge in me, how would counsel have used that report? Give me in a very practical, physical sense. He has this report now in front of him, Ratcliffe. All three people. Okay, yes, he has the report. Just take any one of them. He has the report and he thinks there's, and you're saying he should have used it. Tell me exactly how he was going to use it. Was he going to go to the girl and say, didn't you tell the police on this day such and such, to a six-year-old or a seven-year-old or whatever? How physically was he going to do it? Was he going to try to introduce it in hall? Was he going to try to use it as a tool for cross-examination? Exactly what was he going to do with it? He had two valid options, both of which he could have done because they're not mutually inconsistent. The first is that he can cross-examine the witness based upon the statement. Do you really think, it's one thing to cross-examine a 40-year-old felon with this, but if you're cross-examining a child less than 10 years old, a young child, and you say, I have here, do you remember that you were interviewed on such and such a day? No, I don't really remember. And did you tell officers, boy, that's an unpromising scenario. And the only thing worse would be introducing the whole thing. And then if you introduce the other option, he can't introduce the whole thing. He can introduce it under Pennsylvania law. Assume that he can. Why would he do that? Because he doesn't have to introduce each and every statement. He can introduce the things that are inconsistent. There are statements in there that are inconsistent with their testimony. And what you have to realize here is that the case... He redacted it, and then what about the other side? They said, look, I want to put the whole thing in. You don't understand this. Even if that were the strategy, it's obvious in the record that that was not the strategy because there was materials just as damaging in the preliminary hearing testimony that came in the exact same way. So with respect to that, what that does... Well, if that's true, then you get past the prejudice point. If you're saying it's the same stuff... Because the preliminary hearing stipulation brought in that she'd given a prior inconsistent statement. The boys would have been given prior inconsistent statements. And so if there's another prior inconsistent statement that could have been brought in with respect to Radke's report or Rodriguez's statement, can you show prejudice of the jury heard the same inconsistency in a different statement? Yes, Your Honor, you can for a couple of reasons. One is that there's another statement in HK's case, which is she never saw her sister abused. And that wasn't brought in. Counsel asked no question on that. Where is that, in Radke's statement? Yes. But boy, if they try to bring in... No, but if they try to bring in... If Mandel tried to bring in the fact that HK said she never saw her sister abused, my God, then they've got all this other stuff with all kinds of abuse that they can bring in to mitigate that prior... That is really opening the door to the anal, digital, penal, all kinds of stuff. Your Honor, it's the first statement of which there's any written record. There's no prior statement to it. They can't show a prior consistent statement because there is not. It's the first statement. Isn't there multiple incidents, though? I mean, the problem is that she says somebody wasn't in the room at a certain time. Yeah, you're saying she never saw her sister abused. Your Honor, the problem is that both children were incompetent. That's ultimately... Oh, I'm sorry, both the problem was... Both children were incompetent. But that's not before us. Get to the prior inconsistent statement. The prior consistent statement that they would have to show to a rehabilitator is not prior to Rackett's report, but prior to her testimony at trial. And if they had a statement, say the very first recorded statement, she says, I never saw her abused. And you could argue that's before anybody got to her, before the DA started beating up on her, before anybody started planting these thoughts in her mind. She's having the first contact that she never saw her sister abused. They're going to come forward and quote, remind her, close quote, that in a lot of other statements when she was interviewed, and they'll set it all up with the attorney she was in and all this other stuff, that she saw not only the kind of abuse that he's being tried with, but all other kinds of abuse that my guess is Mandel does not want the jury to find out about. And that's why I say the pressure just forms the problem. Your Honor... She... Well, no, HK did not testify. With respect to SK, the case that the government presented, that the Commonwealth presented, was narrowly limited to this one event with a mutually corroborating testimony. There is a statement in there. The prosecutor asked one single question. Did he ever do anything else like that any other time? The answer was no. No follow-up, no attempt to prompt. So the way that the case was framed was this mutually corroborating testimony that did not leave open the possibility of all this other evidence coming in. And on top of that, there is no evidence in Racka's report that this other thing happened. There is no evidence. There is perhaps one statement on cross-examination in the preliminary hearing that maybe SK was present for something. With respect to Heather, that's it. There is no massive other evidence where the two are being abused together. There is no other massive evidence that relates to oral sodomy. That's what the case was. That's how the government framed the case, and that's how they limited it in their questioning of witnesses. Even so, the government came up, the co-defendant, because of that. In fact, because of that, there was no room for defense by the co-defendant that abuse may have occurred, but she didn't participate. And her counsel tried to get evidence in that way. That was denied, and then the Commonwealth came back and put the same evidence in over objection and a motion for a mistrial. Counsel, let me switch to another issue with your light gun. Was this issue waived? The issue, as I see it, about the failure to impeach was not raised on direct appeal, was it? No, it was not. So it was raised for the first time at the post-conviction PCRA in Pennsylvania. That's the first time you raised a somewhat similar issue, but not that issue. In those days, before the law was changed in Pennsylvania, ineffective assistance of counsel was supposed to be raised on appeal. I think the law has changed since then. The first time you had a new attorney, you could have raised it. In other words, when on direct appeal, not only you could have, there was an obligation to raise it. The law, as I gather, changed in Pennsylvania, but they've also said you look at the law in effect at the time the event occurred. Except for in this case, Your Honor. Who was his attorney on direct appeal? Was that Mendoza? No, a changed attorney. Susan Kahn. She was the third attorney, because there was a second attorney came in for sentencing. Yes, although he, under the law, and this was raised and was never made an issue in the state court proceedings, he came in for a very limited purpose, which was for reconsideration of sentence. In those circumstances, he had no duty to raise the effectiveness of prior counsel. It wasn't raised on appeal. No. That the counsel was ineffective. Absolutely not. I see my time's up. I'm going to answer that. But then, if you could get around that, if you could show that appellate counsel on direct appeal was ineffective for not raising it. The layering claim. The layering problem. Is that your response? There are two. There are multiple responses. The first one is, in Pennsylvania, the claim was waived, yet it was still exhausted. We conceded it was waived, yet, properly, under Pennsylvania law before McGill straightened it out to adopt federal standards for proof of ineffective assistance of counsel. It was both. We conceded it was waived, yet, quite properly, as for ruling on the merits of the underlying trial claim. So that's one reason that the waiver is immaterial for federal purposes. The second reason is that it depends upon evidence outside the record on the direct appeal. Now, the Superior Court, contrary to your understanding, Judge Ramos, of what Pennsylvania law is generally, is absolutely correct. That's not the law in this case. The Superior Court, in this case, intentionally violated the law to avoid addressing actual record claims. They said that Grant relieved appellate counsel of the duty to challenge things that were not in the record back in 1995, which is years before the Grant decision. And that's just fundamental intellectual dishonesty to avoid federal claims. The third reason is appellate counsel was, in fact, ineffective. This case is a mess. We've got stipulations in lieu of cross-examination. We've got outrageous arguments. We've got a very profound fundamental competency challenge, which the Superior Court acknowledged was... That's not before us. We can't get to it. This court can get to it if you find that it is relevant to the application of the stripling standards. And I submit to you that it is with respect to appellate counsel. These are issues in the case that weren't raised. What counsel raised was, number one, the claim that a... Well, I assume that she was qualified as a witness to the normal kind of competency hearing when you have a minor testifying. It was very cursory. It was very cursory. It was held in front of the jury, which is independently prejudicial. As part of that competency hearing, the judge instructed the little children, tell the truth, don't tell any lies, and they agreed. And that's in front of the jury. And this is a credibility contest between two adults and two small children. How was that issue before us? Where is it? How was that issue before us, the competency issue? The competency issue... Excuse me. The competency issue is exhausted throughout state court. It is raised in the federal habeas petition. It was raised in the objections to the magistrate report. There was not a certificate of appealability granted on it. Since the certificate of appealability was... Since the appeal was filed, this court in DeGuglielmo held that competency... Around that time, I forget the exact year, but it was long before 2003 when the Pennsylvania Supreme Court decided Delbridge, held that competency was a valid issue that could support a claim of ineffectiveness. And in fact, in that case, it found that trial counsel was ineffective, or not ineffective, but was derelict, but there was no prejudice. That was the ultimate result. Did the trial counsel object to her finding, to the judge finding the witness competent, or object to the method in which the competency was found? I'm sorry. I didn't mean to create the impression that trial counsel preserved that issue. Trial counsel did not preserve that issue. What has been raised in PCRA proceedings and preserved throughout federal appeal, including objections to the magistrate report, is the ineffectiveness of trial counsel to bring forth expert testimony. I mean, he had the massive information that shows that, in fact, these statements were all over the place. And that, in fact, even before he heard what the witnesses said at trial, because what they said at trial is brand new, and not only brand new, but it's unified. They testify to the same thing, to the same new things. At that point, he's got a... He can renew his competency challenge right there, because that is a major indicator of a problem with competency, because, number one, people don't... The natural operation of memory is not to remember new things, and it's certainly not to remember the same new thing across two individuals. Did you seek a time for rebuttal? No, I did not. I think I meant to, but I think I failed to. He waived that. Well, I'm not going to touch that one. All right, period. I didn't want to cut you off, but we have read the reason very carefully, and I'm not sure that we're raising any new ground with what you're getting to in this part of the presentation. Well, the point I would like to make with respect to the competency is how it casts the trial in a whole new light. If he had used these statements, if he had used his skill as a lawyer to introduce what was admissible, exclude what was inadmissible, either through the witness or admitting the statement itself, the police report itself, all of which could have been done, what that does is that anchors a showing of how the testimony was brand-new at trial. Okay, that part of the... We do understand that. You're arguing that if you're going to use a prior statement, in effect, it is a stricter claim based on that. Right, right. Thank you very much, Mr. Sweeney. Pleasure. Mr. Fairman? That's fine, that's fine. May it please the court, my name is Robert Fallon from the Philadelphia District Attorney's Office representing the appellees in this matter. Good morning, or good afternoon, your honors. Certainly good evening. Was there any evidence given by the counsel at trial as to why he made certain decisions to allow, during the break, the evidence from the preliminary hearing to be read in as opposed to continued cross-examination of the children? Your honor, there was. What happened was H.K. took the stay-in at trial and at a certain point during the co-defendant's, the co-defendant's lawyer's cross-examination of H.K., she was having difficulty remembering details about the preliminary hearing. What the co-defendant's counsel was trying to do, of course, was trying to use the preliminary hearing testimony to impeach her trial testimony. After a series of times when H.K. couldn't remember questions, I think at some point she couldn't remember even going to court, the trial judge asked the parties to go into the back and at that point they talked about reaching some sort of agreement about how to use the preliminary hearing testimony as impeachment material, but without kind of browbeating this victim about things that she wasn't remembering. Was that discussion limited just to the preliminary hearing testimony or did the defense counsel try to enlarge that to include some way of getting at Rackett's statement, the other statements that were sitting out there, Rodriguez's statement? No, your honor, it was limited to the preliminary hearing testimony and as opposing counsel pointed out in his brief, after they reached that agreement, counsel were still free to cross-examine about other matters. Why isn't counsel ineffective for not doing that, for not getting into parts of Rackett's statement and Rodriguez's statement, where there's just in a way denial of any abuse? Right, your honor, I think with regard to those police interviews, it's very important to identify exactly what Mr. Lucic is saying is the inconsistency, and as far as I can tell there are four alleged inconsistencies that he insists were critical to impeachment. And so there's four, and I think if you look on page 38-39 in his reply brief, he seems to concede that two of those four were not even inconsistent at all. And I'll just address, if it's all right with the court, two of the remaining two, and I think they give some example of what type of inconsistencies we're dealing with. The first is the court got into it with opposing counsel about HK's denial of the oral sodomy. She told Detective Radka during the interview on sex crimes that Mr. Lucic had touched her privates, and then after discussing that, the detective asked her about her reports about the oral sodomy. He asked her, didn't you report this incident to your neighbor? At that point, HK basically said no, David didn't do that, he just stuck his fingers in my mouth. After a few more questions, she told the detective, I don't want to talk anymore, can I go now? So that is inconsistent with her trial testimony about the oral sodomy that Mr. Lucic inserted his penis into her mouth. But what I think is very important is that same type of inconsistency was brought out at trial. At the preliminary hearing? That's correct, Your Honor. At the preliminary hearing, HK repeated the denial and said that it was just Mr. Lucic's fingers. And what happened was then she was able to communicate the oral sodomy by pointing to the penis area of an anatomically correct doll and then pointing to her mouth. And at that point, she was able to communicate more freely about that incident. And that was all brought out. The jury heard that. Now, of course, the prosecutor was able to re-read the preliminary hearing testimony in full and then say, well, yes, she denied it, but she also was able to later testify about it. But that was in front of the jury. Another purported inconsistency is Mr. Lucic says that in the police report, SK denied seeing HK abused. Specifically, he says that SK denied to Detective Ratka that she saw the oral sodomy committed against her sister. And that's simply not true. If you look at the police interview, what part of that is not true? It's not true in that SK did not deny that she saw Mr. Lucic orally sodomize her sister. At trial, she testified that she saw Mr. Lucic do this. And in the police interview, if you look at the very first couple of sentences, she states that Mr. Lucic would put his penis in my mouth and my sister's mouth. So maybe defense counsel could have asked her, well, what was your foundation for making that statement in your police statement? But I don't think that would have accomplished a whole lot. Because she says, you know, if the witness says David abused my sister and I, and then, you know, says David abused me and I saw him abuse my sister, there's no real inconsistency. Maybe there's an omission, but it's not particularly helpful. And what Mr. Lucic focuses on on that issue is later in SK's interview, the detective starts asking her about other touchings. And at that point, she denies that her sister was present. So if defense counsel, Mr. Mindell, had tried to use that as an inconsistency, the prosecutor would have come back and said, no, no, no, wait a minute. What she was talking about there were these other touchings, and there are quite a few other instances reported in SK's initial interview with Detective Radka. So it's not inconsistent, and it also would have opened the door to draw attention to additional acts, because the prosecutor certainly would have been able to put that statement in context. So that's typical of the four inconsistencies we have here. Either they're not inconsistent or that they were brought out of trial. And so I don't think if we focus on those police interviews in light of the record, a careful, detailed review of those, I think, will reveal that there really wasn't anything to be gained by using these statements. I think the magistrate put it aptly when he said that Mr. Lusick's attacks on Mr. Mindell's cross-examination ignores the realities of the courtroom. And, Your Honor, there's also opposing counsel allege that Mr. Mindell was unaware of Detective Radka's report. There's no evidence of that. Those statements were turned over to Mr. Mindell in discovery. And at one point, after the agreement was reached about how to handle the preliminary hearing testimony, Mr. Mindell asked a few more questions of HK. And his first couple of questions related to whether HK remembered going to the police station and talking to police. She said that she didn't. So I think that indicates a couple of things. One is that there's really no reason to conclude that Mr. Mindell just didn't read his file or read the discovery. And two, it also suggests that maybe he was thinking about probing her police interview, but when she was having the same type of difficulties remembering that were present with the preliminary hearing, maybe he decided not to do it. And based on the fact that really there are no meaningful inconsistencies that weren't brought out by the preliminary hearing testimony and also the damaging information in there about his client. And I also note that the competency issue, I didn't brief it. It wasn't a certified issue. And so it's hard to see how that fits into the actual certified claims here. It is troubling. I'm not sure we can either. That's not certified, as you said. But if we could, and there's competency hearings in common with this court, and you've seen them, I'm assuming, that they're two-minute inquiries. And this may not have been that kind of an inquiry because of the nature of the offense in the age of the kids. But if there's all of this other evidence which Mr. Sweeney said is available to Mr. Mindell to undermine the competency hearing, I guess we must forgive him that. You want to address that in the 28-J letter? Sure. Do that. But if that was not done, because that's the entire case. Right. Well, I'd also like to address opposing counsel's comments about how these girls didn't report the oral sodomy in the beginning, but then towards the end they had this kind of joint, consistent case against Mr. Lucey. Is that with the anatomically correct doll? Because that's the classic way in history that they use to basically distort young kids' testimony. It's the use of the doll that they ultimately get the testimony they want. There's lots of other examples of that. That's a highly suspicious circumstance, let me put it that way. It has to be viewed in context of the entire case. The girls, the abuse occurred on an early morning. They went down the street. They reported it to their neighbor, Rosemary Rodriguez, whom they had known for a relatively short period, I think three or four weeks. They then reported it to Officer Zott, who showed up on the scene. At some point they reported it to Child Protective Services. Then at 8 p.m. that night they reported it to the medical staff at the hospital. During that same day where they're constantly talking about this offense that occurred that very same day, they also talked to Detective Radka. The fact that HK did deny the oral sodomy at that time, I think, has to be looked at in context of her repeated times where she did relate the story to people in a prompt, in a timely way. Your Honor, with the other claim, as far as I could tell, there are three claims here. The first claim was the one we just talked about. The second claim is the claim that trial counsel was ineffective for failing to object to prompt complaint testimony. I just very briefly would just say that this Court has made clear that when a state court rules on a matter of state evidentiary law, that it should not be second-guessed on federal habeas review, even when that claim is an underlying issue for an effectiveness claim. So I'd submit that because the state courts held that that testimony was admissible, the related trial to counsel and appellate counsel claim attached to it should fail. And I would just very briefly draw this Court's attention to a case it decided two weeks ago, and I haven't filed a 28-J letter, but I'd be happy to do so, Fager v. Horn. That's relevant to the issue of whether, when a PCRA court denies a claim on the merits, whether EDPA deference should apply to that decision. In that case, the court held that PCRA courts, when they deny a claim on the merits, it is, in fact, entitled to EDPA review. That's all I have, Your Honor. I'd be happy to answer any more questions. I have nothing. Thank you very much, Your Honor. Thank you, Your Honor. I thank, also, again, the case court. Thank you, Your Honor. Thank you.